IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARILYN DOROGI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 2:05-cv-1735 |
| | ) |
| JO ANNE B. BARNHART, | ) Judge Thomas M. Hardiman |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

### I.    **Introduction**

Plaintiff Marilyn Dominique Dorogi (Dorogi) brings this action pursuant to 42 U.S.C. §405(g) of the Social Security Act (Act), seeking review of the final determination of the Commissioner of Social Security (Commissioner) denying her application for Supplemental Security Income (SSI) benefits. This matter is before the Court on the parties' cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure based on the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's (ALJ's) decision, the memoranda of the parties and the entire record, the Court finds the ALJ's decision is supported by substantial evidence. Therefore, the Court will deny Dorogi's motion for summary judgment, grant Defendant's motion, and affirm the determination by the Commissioner.

## II.    Procedural History

Dorogi applied for SSI on October 21, 2003, claiming disability as of August 22, 2003 because of depression, panic attacks, anxiety, bad nerves, myocystitis, scoliosis, asthma, anger problems, and leg and back pain. (R. 13). After her application was denied, Dorogi then requested an administrative hearing, which was held on April 14, 2005 before ALJ Karl Alexander, at which Dorogi and a vocational expert testified. (R. 28-51). Dorogi was represented at the hearing by N. Leah Fink, Esq.

ALJ Alexander issued an unfavorable decision on June 15, 2005. (R. 13-23). Dorogi filed an appeal on August 12, 2005, (R. 9), which was denied by the Appeals Council on November 4, 2005, rendering the ALJ's opinion the final decision of the Commissioner. (R. 5-7). Dorogi then timely filed this civil action on December 19, 2005.

On May 1, 2006, Dorogi filed her Motion for Summary Judgment. (Pl. Mot.). The Commissioner filed her Motion for Summary Judgment (Comm. Mot.) on May 16, 2006. On July 27, 2006, this Court heard oral argument on the cross-motions for summary judgment. At the conclusion of oral argument, the Court requested supplemental briefing regarding two issues: (1) whether the ALJ's adverse credibility determination reflected bias, and (2) whether new medical evidence submitted after the hearing warranted a Sentence Six remand. Pursuant to that request, Dorogi filed a Memorandum of Law (Pl. Supp.) on August 10, 2006 and the Commissioner filed her Supplemental Brief (Comm. Supp.) on August 11, 2006.

**III.  Facts**

Dorogi was 41 years of age at the time of the ALJ's decision, making her a "younger person" under the regulations. *See* 20 C.F.R. §404.1563; *see also* 20 C.F.R. §416.963. She received a GED and worked previously as a babysitter, cashier, and waitress. (R. 13, 21).

Dorogi suffers from several physical impairments. Specifically, the record shows that she has asthma, but that it is well-controlled with an inhaler. (R. 234, 238, 358). Dorogi also has complained of neck, back, and shoulder pain sporadically, (*see* R. 180, 189-92, 194, 196, 278-88, 297-311, 352, 356-58), and a September 2003 MRI of her lumbar spine found a possible slight disc bulge or herniation at L4-L5. (R. 204). However, the vast majority of the record shows normal radiological readings, and that Dorogi's symptoms were treated conservatively with medication and physical therapy. (R. 180-202, 207, 271-72, 277-88, 297-301, 352-59).

Additionally, the records shows that Dorogi successfully has been treated for anxiety and depression with medication. (R. 150, 154-55, 161, 166-67, 321, 331, 337). Occasionally, however, Dorogi's psychiatric condition worsened while on medication. (*See* R. 160, 171). In September 2004, she reported suicidal ideation following a fight with a friend's husband, and was hospitalized for three days. (R. 244-52, 325). Her Global Assessment of Functioning[1] scores ranged from 30 to 65 during this period, with the high score being most recent evidence before the ALJ rendered his decision. (R. 160, 171, 245, 319).

---

[1]   The Global Assessment of Functioning test (GAF) measures a person's psychological, social, and occupational functioning on a hypothetical continuum of mental health/illness using a scale of one to one hundred. *See* American Psychiatric Association, Diagnostic and Statistical Manual 27-36 (4th ed. 2000) (DSM-IV).

At the hearing, Dorogi testified as to her background and limitations. After summarizing her educational and employment history, Dorogi stated that she felt unable to work because "[t]here's a lot of pain in my back, in my arms, in my legs. I'd say from the feet up to the head there's pain. I get migraines, my legs hurt." (R. 33). Dorogi claimed that her migraines would last whole days, and that — while in the throes of a migraine — she was unable to get off the sofa and her medication was only sometimes effective. (R. 34). She added that her neck pain shot from the nape of her neck down to her lower back; she characterized her neck pain as occasional, and her back pain as constant. (R. 34-35). She explained that her back pain was so intense that she could not stand longer than ten minutes at a time, could not lift anything heavier than a gallon of milk without pain, and claimed that the pain was present even when she sat. (R. 35-36). Dorogi said she treated her pain by lying on the sofa with hot packs and by taking Darvocet and Ibuprofen, but insisted that these did not relieve the pain. (R. 35-37). On a bad day, Dorogi would need to lie down for the entire day, and estimated that she had no more than one "good day" per week. (R. 37).

Dorogi also testified about her other exertional limitations. (R. 37-39). She explained that smoke, perfumes, walking up or down stairs, or even becoming "excited" could provoke an asthma attack. (R. 38, 39). Dorogi also testified that she used inhalers on a daily basis, and that she used a nebulizer twice weekly. (R. 38). She said that her asthma made her more susceptible to other respiratory ailments, and claimed that she suffered from bronchitis "all the time." (R. 39). Dorogi also claimed to experience dizziness on a daily basis — sometimes for hours at a time — because of her hypertension. (R. 39-40).

4

Finally, Dorogi attested to her non-exertional, psychological limitations. As to her anxiety, Dorogi claimed to be afraid of crowds, death, and small rooms, and stated that she had "anxiety about everything." (R. 40-41). Dorogi claimed to experience anxiety attacks 3-4 times per week, and stated that she stayed at home with her husband (who also is disabled) to avoid the onset of an attack. (R. 42-43). Dorogi also testified that she had extreme mood swings and insomnia, and added that she was hospitalized for suicidal ideations in September 2004. (R. 44-46). As a result of her mental impairments, Dorogi stated that her memory was "bad," insisted that she was unable to concentrate, and noted that — when she played cards with her friends — she needed silence so that she could count the cards. (R. 43-44). Dorogi's treatment for her mental impairments entailed taking prescription medications, seeing a therapist on a weekly basis, and visiting a psychiatrist once per month. (R. 46).

The ALJ also heard the testimony of a vocational expert, Gene Czuczman. (R. 46). After characterizing Dorogi's prior work as ranging from light to medium in exertional level, and either unskilled or semi-skilled, (see R. 47-48), the expert was asked to consider the following hypothetical question:

[A]ssume a hypothetical individual of [Dorogi's] age, educational background and work history who could perform a range of light work, would require a sit/stand option, could perform postural movements occasionally, except could not climb ladders, ropes or scaffolds. Should not be exposed to temperature extremes or environmental pollutants, should work in a low stress environment with no production line type of pace or independent decision-making responsibilities. Would be limited to unskilled work involving only routine and repetitive instructions and tasks. Should have no more than occasional, minimal [sic], and no more than occasional interaction with others.

(R. 48). The vocational expert testified that a person with these limitations could perform a variety of light jobs, including that of inserting machine operator, folder, and photographic

5

machine operator, jobs which existed in significant numbers in the local and national economies. (R. 48-49). The expert further opined that, even if a sedentary limitation were included, the hypothetical person could perform other jobs, including that of document preparer, mounter, and type copy examiner; again, all of these jobs existed in significant numbers in the local and national economies. (R. 49). The expert conceded, however, that if this person were "off task" for 1/3 of the workday because of concentration deficits, missed more than 2 days per month of work, or required "complete freedom to rest throughout the day," she would be unemployable. (R. 49-50).

On the basis of the evidence, the ALJ issued a decision which evaluated Dorogi's condition using the five-step sequential process. *See* 20 C.F.R. §416.920. At step one of that process, the ALJ found that Dorogi had not engaged in substantial gainful activity since her alleged date of onset. (R. 14). Accordingly, the ALJ proceeded to evaluate Dorogi's impairments.

At the second and third steps of the sequential process, the ALJ determined that Dorogi suffers from mild degenerative joint disease of the cervical spine, with a history of cervical and lumbar strain, as well as asthma and a major depressive disorder. (R. 14). The ALJ considered these impairments to be "severe" within the meaning of the Regulations, but not severe enough to meet or equal a Listed Impairment, as defined in Appendix 1, Subpart P of the Regulations. (R. 14, 15).

The ALJ then assessed Dorogi's residual functional capacity. After explaining why he found Dorogi's subjective complaints less than fully credible, (*see* R. 16-20), the ALJ determined that Dorogi could perform a partial range of light work, with the limitations noted by the

6

vocational expert. (R. 22). Accordingly, the ALJ found that Dorogi could not return to her prior work. (R. 20). Nevertheless, he found that she could perform a range of light work and perform the jobs that the vocational expert had identified. (R. 23). Accordingly, on June 13, 2006, the ALJ concluded that Dorogi was not disabled at step five of the sequential process. (R. 23).

After the hearing, Dorogi was referred to Charles Goyette, Ph.D. for a psychological examination. After administering a mental status examination and conducting several tests, on June 13, 2006 — the same day the ALJ rendered his decision — Dr. Goyette diagnosed Dorogi with a major depressive disorder, pegged her GAF at 40, and opined that she was totally disabled. (*See* R. 382-87). Per Dorogi's request, the Appeals Council considered this new evidence. (R. 8). Notwithstanding this additional evidence, the appeal was denied by the Appeals Council on November 4, 2005. (R. 5-7).

## IV.    Standards of Review

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1); 42 U.S.C. §1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and is entitled to either DIB or SSI benefits, the Commissioner applies a five-step analysis. 20 C.F.R. §§404.1520 and 416.920 (1995). The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999), as follows:

7

In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied . . . .

In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work . . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step . . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted). The district court's

function is to determine whether the record, *as a whole*, contains substantial evidence to support

the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994), *citing*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Judicial review of the Commissioner's final decision on disability claims is provided by

42 U.S.C. §§405(g)² and 1383(c)(3).³ Congress has provided that the findings of fact of the

Commissioner of Social Security in determining eligibility for disability benefits shall be

conclusive if supported by "substantial evidence." *See* 42 U.S.C §405(g); *see also Ventura v.*

*Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). The Supreme Court has explained that "substantial

evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). The Third Circuit has referred to

this standard as "less than a preponderance of the evidence but more than a mere scintilla."

*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (citation omitted). "A single piece of

evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve,

a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir.

1993) (citation omitted). This standard allows a court to review a decision of an ALJ, yet avoid

interference with the administrative responsibilities of the Commissioner. *See Stewart v.*

*Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

---

²    Section 405(g) provides in pertinent part: "Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the Plaintiff resides, or has his principal place of business . . . ." 42 U.S.C. §405(g).

³    Section 1383(c)(3) provides in pertinent part: "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. §1383(c)(3).

9

## V. Analysis

In this appeal, Dorogi claims reversible error for two reasons. First, she argues that comments the ALJ made in the course of his adverse credibility determination demonstrate bias.[4] (Pl. Mot. at 6). Second, Dorogi asserts that the additional evidence submitted after the hearing — namely, the June 13, 2005 evaluation of Dr. Goyette — warrant a Sentence Six remand. (Pl. Mot. at 14). These arguments are addressed in turn.

### A. Substantial Evidence Supports The ALJ's Adverse Credibility Determination

The lion's share of Dorogi's motion claims that several comments the ALJ made in his decision reflect such a powerful bias against her, her family, and Social Security applicants in general, that his decision is invalid and the case must be remanded to a different ALJ for a new hearing. This Court's review of the record convinces it that — although the ALJ made several observations that were neither necessary to his decision, nor consistent with appropriate judicial temperament — his adverse credibility determination and ultimate decision are supported by substantial evidence.

It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weight of the evidence. *See Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999). Thus, an ALJ is entitled to make an adverse credibility determination as to a

---

[4]     Dorogi also challenges the ALJ's failure to mention some of her GAF scores (which she characterizes as evidence of bias), and the ALJ's posing of a hypothetical question that reflected fewer than all of her limitations (which she characterizes as flowing from the ALJ's allegedly erroneous credibility determination). *See* Pl. Mot. at 11-13, 19-20. Although Dorogi has briefed these as separate issues, they all are resolved by the Court's finding that the ALJ's credibility determination was supported by substantial evidence. Thus, these issues will be addressed in footnotes *infra*.

10

claimant's testimony regarding her limitations. *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983). As such, an ALJ's credibility determinations are entitled to great deference and should not be discarded lightly. *See Reefer v. Barnhart,* 326 F.3d 376, 380 (3d Cir. 2003). This is especially true in a case such as this one, "where the unique subjectivity of the condition and the ease with which its symptoms can be feigned" emphasizes the need to endow the ALJ, as the initial fact-finder, with the authority to determine issues of credibility. *See Wilson v. Apfel,* No. 98-6511, 1999 WL 993723, at *3 (E.D. Pa. Oct. 29, 1999).

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Schwartz v. Halter,* 134 F. Supp.2d 640, 654 (E.D. Pa. 2001) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4; *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 433 (3d Cir. 1999)). As long as it meets those requirements and is supported by substantial evidence in the record as a whole, an ALJ's adverse credibility finding will not be disturbed. *See Miller v. Commissioner of Soc. Sec.,* 172 F.3d 303, 304 n.1 (3d Cir. 1999).

It is against the foregoing authorities that the ALJ's adverse credibility determination must be evaluated. In the case at bar, the ALJ made detailed findings regarding his assessment of Dorogi's credibility. (R. 16-20). Because those findings constitute the core of Dorogi's motion, they warrant quotation at length:

> [Dorogi] was not entirely credible based upon some of her statements and other evidence in the record. The [ALJ] notes that this is [her] fourth application for SSI benefits. Her previous two applications resulted in two unfavorable

11

Administrative Law Judge decisions after respective hearings, with the last
decision dated August 27, 2002, finding [Dorogi] not entirely credible [and]
noting discrepancies between [her] assertions and information contained in the
documentary evidence. The [ALJ] further notes that [Dorogi's] husband
apparently receives disability benefits, providing yet another example of the
strange phenomenon of disability seeming to run in families.
The objective longitudinal evidence falls far short of supporting [Dorogi's]
numerous subjective complaints and shows no significant change since the prior
decision that found her capable of performing light exertional work with a
sit/stand option with limited interaction with others. For example, she has quite
frequent complaints about her "tailbone" and she did in fact fall on that area at
one time. However, [her] complaints about financial problems run throughout the
medical records. She has repeatedly raised this issue in 2003 on January 16,
February 13, 6, 24, and 27, and on June 19; in 2004, [she] has complained of
financial problems on March 9, May 3, June 18, and November 8. These financial
difficulties provide an extremely strong secondary gain motivation for [Dorogi] to
exaggerate her symptoms and the [ALJ] believes that she has done just that to a
very significant extent. She appears to have no desire whatever to work, as she
stated on May 8, 2003, at Chestnut Ridge that she likes not doing anything, which
is certainly consistent with her abysmal work record having never performed work
at a substantial gainful activity for any calendar year. A picture thus emerges of
[Dorogi] and her husband wanting to collect disability benefits, while he spends
most of his time apparently consuming alcohol and she spends most of her day
doing nothing.
Her statements concerning her lack of memory and concentration are also
inconsistent with other evidence and not credible. For example, she stated on
June 21, 2004, at Chestnut Ridge that she does crossword puzzles to decrease her
anxiety. The undersigned is quite a fan of crossword puzzles and is well aware
that solving them takes at least a modest amount of concentration and memory
abilities. Furthermore, [Dorogi] had little problem remembering the names of the
medications and treatment she received. In spite of her complaints of constant
and severe pain, as of June 30, 2004, her pain medication was Ultram, which is
prescribed for mild to moderate pain according to *The Pill Book*, 11th Edition,
page 1087 (2004); and on September 19, 2004, she reported taking only Tylenol
for her back pain. Neither does the [ALJ] find [her] testimony concerning anxiety
and panic attacks to be credible. It is difficult to escape the conclusion that
[Dorogi] is well enough versed in seeking disability benefits that she knows what
she should be saying in order to bolster her disability case.
Her complaints of migraine headaches are likewise unsupported medically with
[Dorogi] reporting only occasional headaches on November 9, 2004, even after
being involved in a motor vehicle accident. Of course, headaches of any sort are
one of the most subjective impairments that can be alleged and in view of
[Dorogi's] lack of credibility, the [ALJ] believes that her headache complaints are

12

yet another exaggeration of her symptoms in order to obtain benefits. She also claimed to have severe dizzy spells from her hypertension that has not been reported or noted by her doctors who have reported that [her] hypertension is controlled by medication. Likewise, [her] testimony of severe chest pain and shortness of breath due to asthma is not consistent with her doctor's report on November 3, 2004, that her asthma is well controlled by medication when she is compliant, noting that her main problem is her husband's smoking and an old moldy carpet, as well as being on too many medications. In fact, a physician reported on September 22, 2003 that [her] medications kept her blood pressure normal and free from pain and anxiety.

(R. 16-17) (citations to record omitted).[5] The ALJ also pointed out that in many other instances

the medical record — which showed that Dorogi's pharmacological regimen generally was

alleviating the symptoms of her various ailments — contradicted or failed to support her claims

of unremitting symptoms of depression, insomnia, and physical impairments. (R. 17-19). The

ALJ then noted: "In view of this determination concerning [Dorogi's] credibility, the [ALJ] does

not accept medical findings or opinions that are based solely or primarily on [her] subjective

---

5    As the foregoing reflects, the ALJ did mention Dorogi's GAF scores of 55 and 65. To
     the extent that Dorogi complains that the ALJ did not specifically address *all* of her
     scores — including low scores of 30 assessed at the time of her hospitalization and
     discharge for the suicidal episode she suffered in September 2004, and scores of 45 and
     50 at various times in 2003 (*see* Pl. Mot. at 12-13) — the Court finds the omission
     immaterial. As this Court recently has noted, "[t]he use of the GAF scale, which
     considers psychological, social and occupational functioning on a hypothetical
     continuum of mental health, is not endorsed by the Social Security Administration
     because its scores do not have a direct correlation to the disability requirements and
     standards of the Act. Instead, the ALJ is to consider the clinical findings contained in
     the narrative reports of medical sources, and is to weigh that evidence under the
     standards set forth in the regulations for evaluating medical opinion evidence, taking into
     account numerous factors including the opinion's supportability, consistency and
     specialization." *See Lyons v. Barnhart*, No. 05-104, WL1073076, *5-6 (W.D. Pa. Mar.
     27, 2006) (citations and footnotes omitted). As long as the "the ALJ adhered to the
     foregoing standards in evaluating the medical evidence to assess Dorogi's mental
     residual functional capacity," his decision must be affirmed. *Id.* Dorogi does not argue
     that the GAF scores the ALJ mentioned are inconsistent with the medical record as a
     whole, and the Court finds that, by discussing the suicidal episode that gave rise to the
     scores of 30 and the circumstances that resulted in the scores of 45 and 50, as well as 55
     and 65, the ALJ fulfilled this obligation.

complaints." (R. 19) (citations to record omitted).

Although Dorogi states that she has "steered clear of asserting that ALJ Alexander is 'biased,'" she insists that the foregoing comments carry "an appearance of impropriety" and that the decision should be vacated on that basis. (Pl. Supp. at 9-10). Although the ALJ certainly made some intemperate and immaterial comments, substantial evidence supports his finding that Dorogi's testimony was less than fully credible.

The Third Circuit has observed that "[t]he right to an unbiased ALJ is particularly important because of the active role played by ALJs in social security cases." *Ventura,* 55 F.3d at 902. Consistent with that right, regulations have been promulgated to ensure that disability claimants receive a fair hearing. Specifically, 20 C.F.R. §§404.940 and 416.1440 (1994), each of which is entitled "Disqualification of the administrative law judge," states in relevant part that "[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party . . . ." At the same time, a presumption exists that the ALJ was unbiased. *See Schweiker v. McClure,* 456 U.S. 188, 195 (1982) ("We must start . . . from the presumption that the hearing officers . . . are unbiased.").

At the outset, the Court notes that it is not *per se* improper for an ALJ to observe that the influence of a claimant's family environment may make her claims more or less credible. *See, e.g., Sheriff v. Barnhart*, 244 F. Supp.2d 412, 430 (finding that the record "substantially supports the ALJ's findings that [the claimant's] problems were attributable primarily to poor parenting decisions as opposed to any underlying mental impairment."). If, as the Commissioner has asserted in the past, the SSA strives to ensure that its "ALJ corps represents the widest range of life experiences," *see Hannon v. Chater,* 887 F. Supp. 1303, 1308 (N.D. Cal. 1995), then it

14

stands to reason that an ALJ need not, and probably ought not, leave his life experiences at the

door when assuming his role as an adjudicator, so long as he does not usurp the role of an expert.

*See Facyson v. Barnhart*, 94 Fed.Appx. 110, 113, 2004 WL 817380, at *3 (3d Cir. 2004)

(explaining that, "[w]hile the ALJ could not of course substitute his own lay judgment for the

examining doctors' medical expertise, he was certainly entitled to use his own experience in the

weighing of evidence to sort through the various medical opinions presented en route to a

reasoned conclusion."). Some of the ALJ's comments about Dorogi's husband — namely, his

drinking and smoking — can be read as poorly-articulated observations that these environmental

factors contribute to or exacerbate her depression and asthma, respectively, and these inferences

are supported by the record. (*See* R. 172, 176, 234).

But some of the ALJ's other comments — most notably, his observation that Dorogi's

"husband apparently receives disability benefits, providing yet another example of the strange

phenomenon of disability seeming to run in families" (R.16) — plainly are irrelevant to a proper

assessment of *Dorogi's* credibility about *her* impairments. These comments cross the line from

an appropriate observation about the influence of the claimant's environment on her overall

condition, into a cynical stereotype of any family with more than one member receiving SSI

benefits. Relying upon authorities holding that an ALJ has a duty to render decisions free from

the taint of actual or apparent bias, *see Commonwealth Coatings Corp. v. Continental Casualty*

*Co.,* 393 U.S. 145, 150 (1968); *see also Grant v. Shalala,* 989 F.2d 1332, 1345 (3d Cir. 1993),

Dorogi argues that, although the comments ALJ Alexander made in his decision may not rise to

the level of actual bias, they carry such an *appearance* of bias that they require remand to a

different ALJ. (*See* Pl. Supp. at 9-10). The Court disagrees.

15

The Court begins with the precept that "[o]ur review of the Commissioner's final

decision denying [a claimant] disability benefits is not plenary." *See Morales v. Apfel,* 225 F.3d

310, 316 (3d Cir. 2000). Thus, despite Dorogi's argument that even the appearance of bias by

itself would require reversal, (*see* Pl. Supp. at 10), the ALJ's adverse credibility determination —

and the decision upon which it is based — must stand as long as it is supported by substantial

evidence. On this point, the Court notes that the U.S. District Court for the Eastern District of

Pennsylvania, when faced with a similar challenge to an ALJ's impartiality, stated:

> In assessing the sufficiency of the ALJ's decision, I note that although the ALJ's
> statements may not rise to the level of bias, several comments by the ALJ are not
> prudent. Any tribunal permitted by law to try cases and controversies not only
> must be unbiased but also must avoid the appearance of bias. Here, the ALJ's
> decision contains multiple statements that give the appearance of bias. However,
> even assuming that the ALJ improperly relied upon such considerations, there is
> other substantial evidence of record to support the ALJ's credibility analysis, and
> remand is not necessary.

*Combs v. Barnhart,* No. 03-CV-5526, 2005 WL 1995457, at \*2 (E.D. Pa. Aug. 16, 2005)

(citations omitted) (citing *Grant v. Shalala,* 989 F.2d at 1345). Thus, despite Dorogi's claim that

the Court may not "subtract" the ALJ's improper comments to determine whether sufficient

evidence remains to support the adverse credibility determination, (*see* Pl. Supp. at 10), *Combs*

and other cases decided in the Third Circuit indicate that the Court should do precisely that.[6]

---

[6]     *See Rosenbaum v. Barnhart*, No. 01-2519, 2002 WL 32350020, at \*4 (E.D. Pa. Mar. 15,
2002) (holding that, although "some of the observations the ALJ made in her opinion
may have been irrelevant, I conclude that her evaluation of [the treating physician's]
opinion and [the claimant's] credibility were proper and supported by substantial
evidence in the record."); *see also Alexander v. Shalala,* 927 F. Supp. 785, 796 and n.5
(D. N.J. 1995) (noting that, although an ALJ's adverse credibility determination
contained "troublesome" comments, irrelevant observations, and distortions of the
factual record, reversal was not warranted where, after subtracting out the improper
comments, his credibility determination was still supported by substantial evidence).

16

After reviewing the decision in light of the record, the Court is confident that — once stripped of the cynical observations the ALJ made in the guise of painting a "picture"of Dorogi — his adverse credibility determination is firmly grounded in the record evidence, and is supported by substantial evidence.

First, the record is replete with evidence to support the ALJ's conclusion that Dorogi's subjective complaints were not credible. The ALJ made lengthy and specific findings that Dorogi's claimed limitations were unsupported by, and at times flatly inconsistent with, the medical record and her daily activities. (*See* R. 16-19). Significantly, Dorogi does not argue that the ALJ misrepresented the record in reaching those findings, and the Court finds that he did not. Moreover, it is axiomatic that inconsistencies between a claimant's subjective complaints and the medical evidence may undermine her credibility. *See Burns,* 312 F.3d at 130-31 (holding that the ALJ may reject testimony of subjective complaints where it is not consistent with medical evidence). Here, the ALJ found that the claimant's ability to recall her lengthy treatment history and to concentrate long enough to complete crossword puzzles simply could not be squared with her inability to remember why her own husband is collecting SSI, or with her claims of disabling concentration deficits. These inconsistencies permitted the ALJ to infer that Dorogi's testimony was less than fully credible. *See Smith-Felder v. Commissioner of Social Sec.,* 103 F. Supp.2d 1011, 1013 (E.D. Mich. 2000) (finding a claimant's own testimony as to her loss of concentration while performing daily activities not credible in light of other evidence in the record, including her ability to do crossword puzzles); *see also Merkerison v. Barnhart,* No. 02-443-SLR, 2003 WL 21844351, at *6 (D. Del. July 31, 2003) (finding that "reports of [the claimant's] impaired concentration and memory are inconsistent with evidence of [him] recalling the date and location

17

of his appointment, driving a vehicle, and remembering items when asked" by his doctor).

The ALJ also noted that the type and apparent effectiveness of the treatment that Dorogi received for her various impairments undercut her claims that they were disabling. Specifically, the ALJ noted that some of Dorogi's symptoms were being treated with mild medications, and that — to the extent that she received stronger prescription medications for her other symptoms — the record reflected that those medications alleviated her symptoms well, without significant side effects. Once again, Dorogi does not — and cannot — challenge this interpretation of the record because it is well-established that an ALJ may attach significance to the type of medication a plaintiff takes for alleged pain. *See Welch v. Heckler,* 808 F.2d 264 (3d Cir. 1986). Where, as here, the record shows conservative treatment and effective management of symptoms with medication, that evidence may undercut a claimant's contention that she is totally disabled. *See Lozado v. Barnhart,* 331 F. Supp.2d 325, 338-339 (E.D. Pa. 2004) (affirming an ALJ's adverse credibility determination where the record showed a claimant underwent a "conservative course of treatment" with "medications that have proven effective in regulating the claimant's symptoms"); *see also Bryant v. Bowen*, 683 F. Supp. 95, 99 (D. N.J. 1988) (finding that pain which is "controlled by relatively mild treatment" was not disabling).

Additionally, the ALJ was troubled by the fact that, during at least one diagnostic test administered by a treating physician, Dorogi displayed "poor effort," which he interpreted as "some symptom magnification." (R. 19). Indeed, the record supports this observation. (R. 180). As a legal matter, the inference the ALJ drew from this evidence was proper because evidence suggesting that a claimant is attempting to manipulate the outcome of medical examinations is precisely the kind of data that an ALJ may consider when assessing her credibility. *See Davis v.*

18

*Barnhart,* No. 03-13, 2003 WL 22120274, at \*4 (E.D. Pa. Sept. 9, 2003) (noting that, where the

evidence showed that a claimant "was not giving full effort during testing or was exaggerating

her symptoms," the ALJ could discount her credibility and any medical opinions based on her

recitations of her subjective symptoms); *see also Eschenbach v. Secretary of Health and Human

Services,* No. 04-313-SLR, 2005 WL 1353801, at \*8 (D. Del. June 7, 2005) (affirming an ALJ's

adverse credibility determination and his ultimate finding of non-disability where the record

contained evidence that the claimant "did not give maximum effort in physical tests").

Another basis for the ALJ's adverse credibility determination was Dorogi's "abysmal

work record," which reflected that she had "never performed work at a substantial gainful

activity level for any calendar year," and her very strong motivation to obtain benefits, as

displayed by her repeated lamentations about her financial situation throughout the medical

record. (R. 16). Dorogi does not argue that this assessment of her employment history and her

strong motivation to obtain benefits is unsupported by the record, and the Court finds that both

observations enjoy substantial evidentiary support. Moreover, it is well-settled that a claimant's

poor work history is evidence that an ALJ may consider when assessing her credibility. *See

Powell v. Barnhart,* 437 F. Supp.2d 340, 343 (E.D. Pa. 2006) (affirming a finding of non-

disability where the ALJ "considered [a claimant's] spotty work history before the alleged date of

disability" (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979) (holding that a

claimant's work ethic is a valid consideration for an ALJ in assessing credibility)). Likewise, an

ALJ may consider the effect that a claimant's economic circumstances has on her incentive to

work. *See Pachilis v. Barnhart*, 268 F. Supp.2d 473, 483 (E.D. Pa. 2003) (citing *Gaddis v.

Chater,* 76 F.3d 893, 896 (8th Cir. 1996) for the proposition that an ALJ properly could find that

19

a "strong element of secondary gain" diminished the credibility of a claimant's complaints).[7]

Ordinarily, it would be enough for the Court to "caution the ALJ to limit his credibility assessments to that which is clear from the record or apparent upon the examination of a claimant." *See Alexander*, 927 F. Supp. at 796 n.5. But this ALJ also would be well advised to refrain from making immaterial and intemperate remarks at his hearings, or from including them in his decisions. Where, as here, there is substantial evidence to support the conclusion that a claimant is not credible, it is sufficient to say so in a dispassionate manner without attempting to draw into question the credibility of the claimant's relatives who are not even before the tribunal. In the final analysis, however, substantial evidence exists in the record to support the ALJ's adverse credibility finding in this particular case. Accordingly, the Court declines to find that the decision was tainted by bias, and will not remand the decision on this basis.[8]

---

[7]    It is in this context that Dorogi's challenge to the relevance of the ALJ's comment about the denial of her three previous applications for SSI benefits must be assessed. (*See* Pl. Supp. at 12-13). Although ALJs should avoid characterizing the number of SSI applications a claimant previously has filed as an issue bearing on his or her credibility, in the case at bar the Court concludes that this evidence lends marginal support to the ALJ's assessment of her motivation to obtain benefits. (*See* R. 16).

[8]    Dorogi also argues that the ALJ's hypothetical question to the vocational expert requires reversal because it is "inaccurate." (Pl. Mot. at 19). Although Dorogi does not specify which limitations she believes a properly-worded question would have contained, she argues that reversal is necessary because "the ALJ's credibility findings are tainted beyond repair." (Pl. Mot. at 20). As noted above, however, the Court finds that the ALJ's credibility determination is supported by substantial evidence. *See Rutherford v. Barnhart,* 399 F.3d 546, 554-55 (3d Cir. 2005) (noting that the ALJ's hypothetical question to the vocational expert need only include all of the limitations credibly established in the record, and may properly exclude any limitations alleged by the plaintiff that are "reasonably discounted" by the ALJ). Because Dorogi has not argued — let alone shown — that any limitation was *unreasonably* discounted by the ALJ, the Court rejects her otherwise unsubstantiated challenge to the content of the question the ALJ posed to this expert.

20

## B. Dr. Goyette's June 13, 2005 Opinion Did Not Warrant A Sentence Six Remand

At oral argument, Dorogi indicated her belief that, although the Appeals Council reviewed her new evidence — *i.e.*, the opinion of Dr. Goyette, which was rendered after the hearing and thus, too late to inform the ALJ's decision — in reality it gave that evidence short shrift in denying her request for review. After reviewing the parties' supplemental briefing on this issue, the Court concludes that a Sentence Six remand is not warranted both because Dorogi has not offered "good cause" for her belated production of the opinion, and because it is not "material" within the meaning of the pertinent statute.

Under Sentence Six of 42 U.S.C. §405(g), later-submitted evidence warrants a remand only if it is found to be new and material, and if good cause is shown for its late submission. Evidence that is merely cumulative may not be classified as "new." To be "material," evidence must be relevant, probative, related to the period at issue, and sufficient to create a reasonable possibility that the Commissioner's decision would have been changed by its presence. *See Altomare v. Barnhart,* 394 F. Supp.2d 678, 686 (E.D. Pa. 2005). Finally, a claimant must demonstrate "good cause" for not having incorporated the additional evidence into the original record. *Id.; see also Szubak v. Sec'y of Health and Human Services,* 745 F.2d 831, 833 (3d Cir. 1984). This Court may order remand based on the evidence presented to the Appeals Council only if it finds it to be new and material to the period at issue. *See Matthews v. Apfel,* 239 F.3d 589, 594 (3d Cir. 2001).

In this case, Dr. Goyette examined Dorogi on June 9, 2005, and conducted a number of diagnostic tests. (R. 382). On the basis of these tests and his observations of Dorogi —

21

including her statements to him about her medical and psychiatric history — Dr. Goyette

concluded that Dorogi suffered from a major depressive disorder, an obsessive compulsive

disorder, and assigned her a GAF of 40.[9] He also opined that Dorogi was not capable of working

more than part-time and recommended that she be awarded SSI "contingent upon her active

participation in resolving her mental health issues, and working with vocational rehabilitation

professionals to secure appropriate employment." (R. 387).

At the outset, the Court notes that Dorogi has not even attempted to meet her burden of

establishing "good cause" why this report was not generated and produced to the ALJ sooner.

The Third Circuit has explained why this requirement is important:

> [Sentence Six] requires some justification for the failure to acquire and present
> such evidence to the Secretary. We recognize that claimants should generally be
> afforded only one fair opportunity to demonstrate eligibility for benefits under any
> one set of circumstances. Several courts have noted Congress' concern that a
> remand for new evidence without requiring some justification for not having
> offered the evidence at the initial hearing would turn the procedure into an
> informal, end-run method of appealing an adverse ruling by the Secretary. A
> claimant might be tempted to withhold medical reports, or refrain from introducing
> all relevant evidence, with the idea of obtaining another bite of the apple if the
> Secretary decides that the claimant is not disabled.

*Szubak*, 745 F.2d at 834 (citations and internal quotation marks omitted); *see also Matthews*, 239

F.3d at 595 ("[W]e believe that it is a much sounder policy to require claimants to present all

material evidence to the ALJ and prohibit judicial review of new evidence unless there is good

---

[9]      A GAF score of 31-40 signifies "some impairment in reality testing or communication . .
. or major impairment in several areas, such as work or school, family relations,
judgment, thinking or mood." DSM-IV at 34. A GAF score of 41-50 indicates "serious
symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or]
any serious impairment in social, occupational, or school functioning (e.g., no friends,
unable to keep a job)." *Id.* Thus, "[a] score of 40 is on the borderline between "some
impairment" and serious symptoms." *Dougherty v. Barnhart*, No. 05-CV-5383, 2006
WL 2433792, at *3 n.2 (E.D. Pa. Aug. 21, 2006).

reason for not having brought it before the ALJ. Such a holding is instrumental to the speedy and orderly disposition of Social Security claims.").

As the Commissioner points out, neither Dorogi nor her counsel mentioned her appointment with Dr. Goyette to the ALJ at any time before, during, or after the administrative hearing. (*See* Comm. Supp. at 7-8). Dorogi has not attempted to justify her late production of this evidence, or her failure to mention to the ALJ that such evidence was forthcoming. (*See* Pl. Mot. at 14-19). Indeed, Dorogi's counsel's letter to the Appeals Council simply asked that it consider the new evidence, with no explanation whatsoever as to why it had not been produced earlier or at least mentioned to the ALJ.[10] (*See* R. 381). This complete lack of explanation is insufficient to establish any cause, let alone the "*good* cause" required to justify a Sentence Six remand. *See Purvis v. Barnhart*, No. 06-1226, 2006 WL 3814467, at *1 (E.D. Pa. Dec. 21, 2006) (finding no good cause for a Sentence Six remand where counsel submitted a letter at the "administrative level stat[ing] [that] some of the evidence [was] 'new and confirming' of [her] complaints," but "no good cause was provided for not timely submitting such evidence to the ALJ," either in that letter or in the district court).

Even if the Court were inclined to overlook Dorogi's complete failure to establish good cause for her tardy production of this "new" evidence — and as the foregoing indicates, it is not so inclined — the Court would conclude that this evidence is not "material." As the Commissioner points out, Dr. Goyette's notes are evidently the result of a "one-time

---

[10]     The Court acknowledges that "good cause" is not required for the Appeals Council to consider new and material evidence. *See* 20 C.F.R. §§404.970(b); 416.1585(a). Absent any explanation in Dorogi's briefs, the Court looked to Dorogi's counsel's letter to the Appeals Council accompanying the evidence in question for some explanation, but it provides none.

examination" initiated by counsel after the hearing, evidently with the sole purpose of bolstering Dorogi's case for benefits. (*See* Comm. Supp. at 7). As such, this opinion would be entitled to even less weight than the treating physicians' opinions that the ALJ rejected in his decision. *See Mason v. Shalala,* 994 F.2d 1058, 1067 (3d Cir. 1993) (noting that "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once"). Additionally, in light of the ALJ's adverse credibility determination, there is no reason to think that one more doctor's opinion of disability *based in part on Dorogi's statements* would have changed the decision, especially in light of the ALJ's announcement that he would "not accept medical findings or opinions that are based solely or primarily on [Dorogi's] subjective complaints."[11] (R. 17). Finally, when stripped of its conclusory assertion that Dorogi is entitled to benefits, the actual content of Dr. Goyette's opinion — specifically, its observation that Dorogi could return to work part time — actually undermines her claim that she is disabled. As defined, substantial gainful activity involves "significant physical or mental activities," including part time work, that is for pay or profit. *See* 20 C.F.R. §§404.1510, 1573. The Social Security Regulations clearly state that a person who can work only on a part-time basis may still be capable of substantial gainful activity, depending upon their income level.[12] *See* 20 C.F.R. §404.1572.

---

[11]  The Court observes that, because substantial evidence supported the ALJ's finding that Dorogi's testimony was not credible, it was within his purview to find that medical opinions and treatment notes were likewise not credible to the extent they relied upon Dorogi's statements of her condition. *See Irvin v. Barnhart,* No. 04-1007, 2005 WL 441358, *2 n.1 (E.D. Pa. Feb. 22, 2005) (citing *Morris v. Barnhart,* 78 Fed Appx. 820, 825 (3d Cir. 2003)).

[12]  The Court also notes that Dr. Goyette's observations that Dorogi's memory and concentration were relatively intact (R. 383, 385) conflict with her claims that she suffers from poor memory and concentration deficits.

24

In sum, the Court finds that a Sentence Six remand is not warranted in the circumstances of this case. Dorogi has neither demonstrated "good cause" for failing to produce Dr. Goyette's report sooner, nor has she shown that the evidence would have changed the evidentiary landscape such that the outcome of the decision would have been different. Accordingly, substantial evidence supports the Commissioner's final decision.

**VI. Conclusion**

For all the foregoing reasons, the Court concludes that the ALJ's determination is supported by substantial evidence, and was consistent with the governing regulations. *See* 20 C.F.R. §§404.1529 and 416.929(b). Accordingly, the Court will deny Dorogi's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision below.

An appropriate order follows.

Thos M. Hardiman

Thomas M. Hardiman
United States District Judge

January 17, 2007

25